## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Jeremy Lee Schloss, (880564)    )
                                )
           Petitioner,     )
                                )     Case No. 16 C 3164
      v.                 )
                                )     Judge Charles P. Kocoras
                                )
Gregg Scott, Program Director,    )
Rushville Treatment and Detention   )
Facility, Illinois Department of     )
Human Services,            )
                                )
          Respondent.    )

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Jeremy Lee Schloss, a sexually violent person ("SVP") civilly committed at the Rushville Treatment and Detention Facility, Illinois Department of Human Services ("DHS"), brings this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging his 2013 adjudication as a sexually violent person pursuant to the Sexually Violent Persons Commitment Act, 725 ILCS 207/1, *et seq.*, ("SVP Act") in the Eighteenth Judicial Circuit Court, DuPage County, Illinois. The present petition raises 17 claims challenging his adjudication as an SVP. He also brings a motion to expand the record and introduce newly discovered evidence. The Court denies both the motion to expand the record and introduce new evidence, and the habeas corpus petition. The Court also declines to issue a certificate of appealability.

## 1.     Background

The following facts are drawn from the Appellate Court of Illinois' opinion affirming Petitioner's SVP adjudication. *In re Schloss*, No. 2-13-0658, 2014 WL 5822912 (Ill. App. Ct. Nov. 10, 2014). The state court findings are presumed correct, and Petitioner has the burden of

rebutting the presumption of correctness by clear and convincing evidence. *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 n.8 (2015) (citing 28 U.S.C. 2254(e)(1)).

In February 2005, Petitioner pled guilty to aggravated criminal sexual abuse of his wife. *In re Commitment of Schloss*, No. 2-13-0658, 2014 WL 5822912, at *2. His wife, C.S., was sleeping in her bed with their nine-month-old son. *Id.* He entered the room, pulled his wife off the bed by her legs, put his left hand over her mouth, and, with his right hand, ripped off her sweatpants and underwear, and inserted his fingers into her vagina. *Id.* C.S. and the baby awoke during the attack. *Id.* at *2. She told Petitioner that the baby needed a bottle. *Id.* When Petitioner went to the kitchen to prepare a bottle, C.S. grabbed the baby and fled to a neighboring home. *Id.*

Petitioner was initially sentenced to 180 days in jail, and 36 months of sex offender treatment probation. *Id.* at *1. He was barred from contacting his wife or son as a probation term. *Id.* at *3. Petitioner disagreed with the contact ban as he believed the incident was consensual. *Id.* He violated his probation by contacting his wife by telephone. *Id.* The state court revoked Petitioner's probation and sentenced him to seven years imprisonment followed by two years of mandatory supervised release ("MSR"). *Id.* at *1.

The state filed a petition to adjudicate Petitioner an SVP prior to his release from prison. *Id.* The SVP Act authorizes involuntary civil commitment of an SVP for "control, care and treatment." *In re Stanbridge*, 980 N.E.2d 598, 610-11 (Ill. 2012) (quoting 725 ILCS 207/40(a)). An SVP is defined as a person who has: (1) been convicted of a sexually violent offense; (2) is a danger because he suffers from a mental disorder; and, (3) the mental disorder makes it substantially probable that he will engage in acts of sexual violence in the future. *In re*

*Stanbridge*, 980 N.E.2d at 611 (citing 725 ILCS 207/5(f)). A person adjudicated as an SVP can be indefinitely committed until such time as the person is no longer an SVP. *In re Stanbridge*, 980 N.E.2d at 611 (citing 725 ILCS 207/40(b)(2)). At trial, the state has the burden of establishing that the individual is an SVP beyond a reasonable doubt.

In Petitioner's SVP proceedings, the trial court granted his request to represent himself *pro se* and appointed a stand-by attorney to assist him. *In re Commitment of Schloss*, No. 2-13-0658, 2014 WL 5822912, at *2. The state's evidence at trial consisted of the expert testimony of Drs. Vasiliki Tsoflias and Edward Smith. Dr. Michael Fogel testified as an expert on Petitioner's behalf, and Petitioner provided his own lay testimony.

Beginning with the state's evidence, Drs. Tsoflias and Smith were experts in clinical psychology. *Id.* at *2, *5. Dr. Tsoflias specializes in sex offender evaluations and risk assessment, while Dr. Smith specializes in treatment and risk analysis of criminal sex offenders. *Id.* Both doctors reviewed Petitioner's criminal history, including police and probation reports, court documents, disciplinary history, Petitioner's Illinois Department of Corrections medical files, and previous mental health examination reports. *Id.* Dr. Smith also interviewed Petitioner, while Dr. Tsoflias did not, because Petitioner refused to speak to her. *Id.*

The materials reviewed by the doctors show that, in addition to the February 2005 attack that resulted in Petitioner's criminal conviction, Petitioner admitted to sexually assaulting C.S. on three to five other occasions. *Id.* at *3. In one instance, Petitioner and C.S. were having an argument when he pulled her to the floor and forcibly penetrated her digitally. *Id.*

In another incident occurring on Christmas Eve 2004, Petitioner and C.S. were getting ready to go to a party at a relative's home. *Id.* Petitioner pressed up against C.S. in the bathroom

suggesting that he wanted to have sex, but she said there was not enough time. *Id.* Petitioner responded by saying that they were going to have sex, and pushed C.S. onto the toilet. *Id.* C.S. resisted and Petitioner grabbed her by the neck, resulting in C.S. falling into the bathtub. *Id.* C.S. told Petitioner that they should go into the bedroom in an attempt to escape. *Id.* Their son then started crying in the living room. *Id.* C.S. went to the living room and told Petitioner to leave her alone because their son was in the room. *Id.* Petitioner responded that "this is how I want it," that he had always fantasized about raping a woman, and that this was a fantasy come true. *Id.* Petitioner then pulled C.S. to the ground and raped with her. *Id.* Subsequently, Petitioner threatened to rape C.S any time the couple argued. *Id.*

In addition to Petitioner's sexual violence against C.S., Petitioner was charged in 2003 with criminal sexual abuse, but pleaded guilty to battery of a 17-year-old girl. *Id.* In that incident, the girl was sitting outside a house on the front steps while Petitioner was sitting a couple of steps below her. *Id.* Petitioner asked the girl if anyone was home, and if she wanted to have sex. *Id.* The girl declined. *Id.* Petitioner responded by touching her vagina, and the girl pushed his hand and told Petitioner to stop. *Id.* He repeated his attempts to touch her vagina five to six times, and the girl repeatedly pushed his hand away. *Id.*

Petitioner also has five prior convictions for non-sexual offenses including theft, battery, and driving under the influence. *Id.* He started drinking as a teen or even earlier, and was a regular drinker as an adult. *Id.* He also had a history of using marijuana, cocaine, and LSD. *Id.* He attended some Alcoholics Anonymous groups, and had completed a substance abuse education program, but had not participated in substance abuse treatment. *Id.*

Petitioner received five weeks of sex offender treatment while on probation. *Id.* He was offered treatment in prison, but refused, saying he did not need it. *Id.* Petitioner began treatment when transferred to DHS, dropped out for one year, and then restarted. *Id.* He was in phase two out of five of the treatment programs at DHS when his SVP trial occurred. *Id.*

Dr. Tsoflias opined that Petitioner met the criteria for adjudication as an SVP. *Id.* at *5. Utilizing the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), Dr. Tsoflias diagnosed: paraphilia not otherwise specified, nonconsent; alcohol abuse in a controlled environment; and personality disorder not otherwise specified with antisocial and narcissistic features. *Id.* at *4. In support of the diagnosis, Dr. Tsoflias noted that Petitioner had committed multiple sexual assaults, fantasized about rape, and his behavior had caused significant disruption to his marriage and resulted in incarceration. *Id.* Petitioner showed a disregard for the safety of himself and others, as shown by his repeated criminal acts and alcohol and drug abuse. *Id.* He also showed a lack of remorse for his crimes and generally did not take responsibility for them. *Id.* Dr. Tsoflias concluded that these mental disorders predisposed Petitioner to commit acts of sexual violence because it made him more likely to act on his sexual urges and fantasies. *Id.*

Dr. Tsoflias also concluded, based on several assessments, that Petitioner was likely to reoffend. *Id.* at *4. Petitioner scored in the moderate/high category for re-offense on the Static-99 test, high risk in the MnSOST-R test, and high level of psychopathic traits in the Hare PCLR exam. *Id.* Dr. Tsoflias additionally noted that Petitioner's criminality / lifestyle instability, intimacy deficit, difficulty in self-regulation, and lack of cooperation with supervisors all suggested Petitioner's likelihood to re-offend. *Id.*

Dr. Smith, the other state expert, testified that he also concluded that Petitioner met the criteria for being an SVP. *Id*. at *6. Dr. Smith examined the same records as Dr. Tsoflias, but unlike Dr. Tsoflias, Dr. Smith was able to interview Petitioner. *Id*. at *5. In the interview, Petitioner attempted to minimize the incident with the girl, claiming she dressed like a "whore," leading Petitioner to believe the girl welcomed his behavior. *Id*. He also claimed he did not touch her vagina, but instead only pulled her underwear to the side. *Id*. Petitioner also minimized and failed to accept responsibility for the sexual assaults of his wife. *Id*. Finally, Petitioner described the sex offender treatment in prisoner as "bullshit." *Id*.

Like Dr. Tsoflias, Dr. Smith diagnosed Petitioner with paraphilia, alcohol dependence, and antisocial personality disorder. *Id*. at *6. Dr. Smith also concluded that Petitioner had an anger management problem. *Id*. Petitioner became extremely angry after his parents' divorce when he was a child. *Id*. In school, he once said something regarding climbing a clock tower and shooting people. *Id*. There were also records of Petitioner lashing out at other people or being disruptive while detained at the DHS facility. *Id*. Dr. Smith also concluded, based on the Static-99 and MnSOST-R actuarial instruments, that there was a high risk that Petitioner would reoffend as a sex offender. *Id*.

Petitioner's case consisted of his testimony and the expert testimony from Dr. Fogel. Regarding the incident with the 17-year-old girl, Petitioner claimed he had known her for one year because she was his neighbor. *Id*. at *6. He admitted that he asked her to have intercourse, and she said no. *Id*. Despite that, he pulled her underwear to one side, exposing her vagina. *Id*. Petitioner claimed she giggled and pushed his hand away. *Id*. Petitioner persisted pulling her underwear three more times. *Id*. She again told him to stop, which he did. *Id*.

Petitioner explained that the sexual assaults of C.S. occurred at a time when he was drinking heavily, but he had not used alcohol in eight years. *Id*. at *7. He explained that he had come to realize that his assaults of C.S. were predicated upon his feelings of extreme powerlessness, anger, lack of control, and emasculation that were triggered when C.S. rejected his efforts to have consensual sex. *Id*. He explained how he understood that his own prior history of being an abuse victim also influenced his behavior. *Id*.

Dr. Fogel, an expert in clinical psychology specializing in sexual offenders, interviewed Petitioner for over 12 hours, spoke to his family members, and reviewed the record examined by Drs. Tsoflias and Smith. He explained that Petitioner's relationship with C.S. was dysfunctional, abusive, and influenced by Petitioner's unresolved issues regarding abuse he suffered as a child. *Id*. at *7.

Petitioner's father was an alcoholic who physically and emotionally abused Petitioner's mother when Petitioner was a child. *Id*. The father also directed anger toward and demeaned Petitioner. *Id*. Additionally, Petitioner felt abandoned and unloved when his parents divorced when he was nine years old. *Id*. He began using anger and aggression to protect himself from being emotionally hurt. *Id*.

Petitioner also reported being a victim of verbal, physical, and sexual abuse as a child. *Id*. Other children would beat and tease Petitioner because he was small in stature and did not have much money for clothing. *Id*. One of his older sisters was physically abusive towards Petitioner, touching his penis on two occasions. *Id*.

When Petitioner was approximately 13 years old, a man five or six years older befriended Petitioner. *Id*. Petitioner spent the night at the man's home where, without Petitioner's

knowledge, the man gave Petitioner alcohol. *Id*. The man anally raped Petitioner and forced Petitioner to perform oral sex on him. *Id*.

Petitioner felt powerless after the sexual assault. *Id*. He used anger to lash out at others and began drinking to numb his feelings. *Id*. Petitioner started to have more trouble in school. *Id*. Despite this, Petitioner had a romantic relationship between the ages of 18 and 20 where there was no evidence of abuse. *Id*.

Petitioner began experimenting with drugs between ages 19 and 21, but did not like the way they made him feel. *Id*. He continued to use marijuana and alcohol, but would become angry when he drank because of his unresolved childhood and abuse issues. *Id*. at *8.

Petitioner met C.S. in August 2002. *Id*. They moved in together in 2003. *Id*. Soon thereafter, they began arguing, and the arguing increased once C.S. became pregnant. *Id*. Petitioner was verbally and emotionally abusive towards C.S. when she was pregnant. *Id*. Petitioner described the abuse as reinforcing his power and control in the relationship. *Id*.

C.S. was a teacher with a bachelor's degree, while Petitioner had one semester at a community college. *Id*. Petitioner quit his job and stayed at home to care for the baby and perform household tasks while C.S. was working because it was less expensive than daycare. *Id*. He felt a level of inferiority and power differential from the decision to stay home with the baby, and this resulted in anger. *Id*.

C.S. suffered from postpartum depression and her sexual relations with Petitioner essentially stopped after the birth of their child. *Id*. Petitioner explained that he had played the caretaker role since the pregnancy, and was feeling resentful and angry, like he was her "whipping boy." *Id*.

Dr. Fogel opined that Petitioner did not meet the SVP definition because he did not suffer from a condition that predisposed him to engage in acts of sexual violation, and that Petitioner did not have a mental disorder. *Id.* In support of this conclusion, Dr. Fogel explained that although Petitioner had sexual fantasies that C.S. would submit to his instructions, a study has shown that one-third of individuals in the non-offending population have rape fantasies. *Id.* He also noted that Petitioner did not manifest an arousal from the unwillingness of his victim and demonstrated an ability to stop his conduct and show remorse. *Id.*

The jury adjudicated Petitioner an SVP, and he was committed to DHS custody. *Id.* at *9. The SVP adjudication was affirmed on direct appeal. Petitioner now proceeds with the present habeas corpus petition, (Dkt. 1.) and motion to expand the record and introduce new evidence. (Dkt. 33.)

## 2. Analysis

### A. Petitioner's Motion to Expand the Record and Introduce Newly Discovered Evidence.

Petitioner filed his motion to expand the record and introduce newly discovered evidence while the parties were briefing the habeas corpus petition. (Dkt. 33.) In sum, Petitioner argues that he has additional evidence demonstrating that he does not suffer from a mental disorder, and therefore was wrongfully adjudicated as an SVP. Petitioner does not provide the evidence he wishes to supplement, but instead provides short descriptions of the materials. He claims he has undergone sex offender treatment while in the custody of DHS including a polygraph and penile plethysmograph. He further states he has a letter from the creator of the DSV-IV and DSM-IV-TR, a quote from a former therapist, and other correspondence that support his case. He

also claims to have materials supporting his ineffective assistance of counsel claims raised in the instant habeas corpus petition.

Petitioner's motion to expand the record and introduce newly discovered evidence is denied. First, Petitioner has failed to tender the proposed evidence. He simply provides short discussions of the material in his filing. The Court has no way to verify the accuracy of Petitioner's descriptions without reviewing the source materials.

Second, even if the source materials were tendered to the Court, Petitioner would still be unable to supplement the record with this material. Petitioner's claims are governed by the Antiterrorism and Effective Death Penalty Act. ("AEDPA"). The Court's analysis of Petitioner's claims under the AEDPA are "backward looking." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). The Court is limited to reviewing the record before the state court at the time that court made its decision. *Id*. The AEDPA prohibits Petitioner from presenting new evidence that was not before the state court in support of his habeas corpus petition. Petitioner cannot present new evidence regarding his claims for the first time in this Court when that evidence was not before the state court. *Price v. Thurmer*, 637 F.3d 831, 837 (7th Cir. 2011).

Finally, beyond the above stated reasons against expansion of the record, the Court notes that the evidence Petitioner seeks to introduce would not likely affect this Court's consideration of his claims for habeas corpus relief. An overarching theme of Petitioner's case is his steadfast view that he is not an SVP. He believes this new evidence will show that he is not an SVP. However, Petitioner's case can be summed up as a battle of the experts. This is not a situation where evidence conclusively disproves the state's case such as an alibi or DNA evidence showing a wrongful conviction. To the contrary, Petitioner's adjudication as an SVP occurred after the

consideration of multiple experts.   Petitioner attempts to marshal additional evidence in support of his position, but that does not refute the state's evidence demonstrating he is an SVP. Petitioner's motion to expand the record and introduce new evidence is denied.

**B.      Petitioner's Claims**

Turning to the habeas corpus petition, (Dkt. 1.), Petitioner asserts the following claims in his petition.[1]   (Dkt. 1., pgs. 4-5; Dkt. 5, pgs. 2-5.)

1.      Insufficient evidence to support Petitioner's SVP adjudication.   Petitioner also alleges he is actually innocent as to the SVP charge.   (Respondent labels it Claim 1 in his answer, hereinafter referred to as "Respondent 1").

2.      Petitioner's Fourth, Fifth, and Sixth Amendment rights were violated by the administering of Dr. Quackenbush's evaluation because false statements and false charges were alleged against Petitioner.   (Respondent 7).

3.      Past police reports were improperly introduced to allege Petitioner's mental disorder in violation of his Sixth and Fourteenth Amendment rights. (Respondent 6 and 9).

4.      Denial of proposed jury instruction of special interrogatory resulted in structural error.   (Respondent 10).

5.      Permitting testimony regarding documents of Petitioner's juvenile and adult criminal record and other material not produced during discovery violated his right to a fair trial, and resulted in a *Brady v. Maryland*, 373 U.S. 83 (1963) violation.   (Respondent 2, 3, 4, 5, and 11.)

6.      Adjudication and commitment as an SVP predicated upon prior criminal conviction results in cruel and unusual punishment under the Eighth Amendment.   (Respondent 12).

7.      The trial court erred in allowing the jury to have a copy of the criminal indictments during deliberations.   (Respondent 13).

---

1 Respondent's answer reorganizes and renumbers Petitioner's claims without making reference to the original numbering used by Petitioner.   (Dkt. 23, pgs. 19-20.)   The Court has done its best to match the numbering used in Respondent's answer to the claims as originally numbered by Petitioner in the habeas corpus petition.   The Court shall refer to a claim by both the number assigned by Petitioner, and the corresponding number assigned by Respondent to avoid confusion.

8.    Treatment records by the Illinois Department of Human Services contained compelled and false statements that, if properly excluded, would have resulted in Petitioner being found actually innocent of the SVP charge. (Respondent 7).

9.    Excluding the term "commitment" from the name of the SVP Act in the jury instructions resulted in a structural error.   (Respondent 14).

10.   Use of Petitioner's prior criminal conviction as part of the basis for his SVP adjudication resulted in collateral estoppel and double jeopardy violations. (Respondent 15).

11.   Ineffective assistance of counsel for failing to raise Fourth and Fifth Amendment claims regarding his evaluation by Dr. Quackenbush. (Respondent 8).

12.   Ineffective assistance of counsel for failing to object to a second IDOC evaluation.   (Respondent 16).

13.   Improper appointment of standby counsel when Petitioner chose to proceed *pro se*.   (Respondent 17).

14.   Use of statistical actuarial data to determine dangerousness violates Petitioner's right to be found guilty of every element beyond a reasonable doubt.   (Respondent 18).

15.   The SVP Act is a punitive application of criminal law in violation of his Eighth and Fourteenth Amendment rights.   (Respondent 12).

16.   The attorney for the state shoving a hand inches from Petitioner's face and called him "this rapist" during closing arguments at the SVP trial, violating Petitioner's right to a fair trial.   (Respondent 19).

17.   The trial court's failure to fully and fairly admonish Petitioner of the "quasi-criminal" nature of the case prevented Petitioner from preparing a proper defense.   (Respondent 20).

**i.    Petitioner's Procedurally Defaulted Claims**

Respondent argues Petitioner's Claim 2 (Respondent 7), Petitioner's Claim 3 (Respondent 6 and 9), Petitioner's Claim 4 (Respondent 10), portions of Petitioner's Claim 5 (Respondent 2, 4,

5, and 11), Petitioner's Claim 7 (Respondent 13), Petitioner's Claim 8 (Respondent 2), Petitioner's Claim 9 (Respondent 14), Petitioner's Claim 11 (Respondent 8), Petitioner's Claim 12 (Respondent 16), Petitioner's Claim 13 (Respondent 17), Petitioner's Claim 14 (Respondent 18), Petitioner's Claim 16 (Respondent 19), and Petitioner's Claim 17 (Respondent 20) are procedurally defaulted. (Dkt. 23, pgs. 20-26.)

In specific, Respondent argues the following procedural defaults:

- Claims procedurally defaulted for failure by Petitioner to preserve them through a timely objection at trial are: Petitioner's Claim 2 (Respondent 7), a portion of Petitioner's Claim 3 (Respondent 9), a portion of Petitioner's Claim 5 (Respondent 11), Petitioner's Claim 7 (Respondent 13), and Petitioner's Claim 14 (Respondent 18). (Dkt. 23, pg. 20.)

- Claims procedurally defaulted because they were presented in a cursory fashion without proper citation to authority in the state appellate court are: Petitioner's Claim 9 (Respondent 14), Petitioner's Claim 16 (Respondent 19), and Petitioner's Claim 17 (Respondent 20). (Dkt. 23, pgs. 20-21.)

- Claims procedurally defaulted because they were not presented through one complete round of state court review are: portions of Petitioner's Claim 5 (Respondent 2, 4, 5), Petitioner's Claim 3 (Respondent 6 and 9), Petitioner's Claim 11 (Respondent 8), Petitioner's Claim 4 (Respondent 10), Petitioner's Claim 7 (Respondent 13), Petitioner's Claim 12 (Respondent 16), and Petitioner's Claim 13 (Respondent 17). (Dkt. 23, pgs. 22-26.)

### a. Claims Procedurally Defaulted by Adequate and Independent State Law Grounds of Decision.

Respondent raises two different adequate and independent state law grounds of decision as procedural defaults. "'A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Walker v. Martin*, 562 U.S. 307, 315 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 55 (2009); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The failure to properly preserve an issue at trial through a contemporaneous objection, *Kaczmarek v.*

*Rednour*, 627 F.3d 586, 592 (7th Cir. 2010), as well as raising the claim in the state court in a cursory fashion without citation to authority, *Olawale v. Hodge*, No. 13 C 8535, 2016 WL 278871, at *7 (N.D. Ill. Jan. 22, 2016), each result in procedural default based an adequate and independent state law ground for the decision.

### i. Claims Defaulted due to Failure with Illinois's Contemporenous Objection Rule

Petitioner's Claim 2 (Respondent 7), argues that his Fourth, Fifth, and Sixth Amendment rights were violated during his examination interview with Dr. Quackenbush. (Dkt. 5, pgs. 37-41.) This claim was raised as Issue 25 in his state appellate court brief.[2] (Dkt. 24-2, pgs. 18). The state appellate court held that the claim was barred because of Petitioner's failure to bring a timely objection at trial. *In re Commitment of Schloss*, No. 2-13-0658, 2014 WL 5822912, at *10. This holding is an independent and adequate state-law ground preventing this Court's habeas corpus review. *Kaczmarek*, 627 F.3d at 592. Petitioner's Claim 2 (Respondent 7) is procedurally defaulted.

A portion of Petitioner's Claim 3 (Respondent 9) argues that Petitioner was denied a fair trial by allowing the State to introduce police reports at trial. (Dkt. 5, pgs. 41-42.) This claim was raised to the state appellate court on direct appeal as Issue 20 in his state appellate court brief. (Dkt. 24-2, pgs. 18). The state appellate court found the claim was defaulted for failing to bring a

---

2 Petitioner listed his claims in a different order in his state appellate court brief from the numbering used in his habeas corpus petition. The state appellate court opinion often referred to Petitioner's claim by number only. Thus, to track a claim, one must identify it by its number in the state appellate court opinion and then match it to the corresponding number assigned by Petitioner in his habeas corpus petition, and the different number assigned by Respondent's answer. Unfortunately, each claim is assigned three different numbers in the record. Consequently, the Court has addressed each claim in a separate paragraph. Although repetitive, the Court utilized this approach to allow the reader to follow each claim through the multiple numbering.

timely objection at trial.  *In re Commitment of Schloss*, No. 2-13-0658, 2014 WL 5822912, at *10. This holding is an independent and adequate state-law ground preventing this Court's habeas corpus review.  *Kaczmarek*, 627 F.3d at 592.  Petitioner's Claim 3 (Respondent 9) is procedurally defaulted.

A portion of Petitioner's Claim 5 (Respondent 11) argues that Petitioner was denied a fair trial when the trial court allowed testimony regarding Dr. Smith's reliance on Petitioner's juvenile criminal history in forming his opinion that Petitioner was an SVP.  (Dkt. 5, pgs. 45-46). Petitioner raised this claim as Issue 20 in his state appellate court brief.  (Dkt. 24-2, pg. 18.).  The state appellate court found the claim was defaulted for failing to bring a timely objection at trial. *In re Commitment of Schloss*, No. 2-13-0658, 2014 WL 5822912, at *10.  This holding is an independent and adequate state-law ground preventing this Court's habeas corpus review. *Kaczmarek*, 627 F.3d at 592.  The relevant portion of Petitioner's Claim 5 (Respondent 11) is procedurally defaulted.

Petitioner's Claim 7 (Respondent 13) argues that the trial court erred in allowing the jury to have a copy of the criminal indictments during deliberation.  (Dkt. 5, pg. 59.)  The claim was raised as Issue 13 in his state appellate court brief.  (Dkt. 24-2, pg. 17.)  The state appellate court found the claim was defaulted for failing to bring a timely objection at trial.  *In re Commitment of Schloss*, No. 2-13-0658, 2014 WL 5822912, at *10.  This holding is an independent and adequate state-law ground preventing this Court's habeas corpus review.  *Kaczmarek*, 627 F.3d at 592. Claim 7 (Respondent 13) is procedurally defaulted.

Petitioner's Claim 14 (Respondent 18) argues that the use of statistical actuarial data to determine dangerousness violates Petitioner's right to be found guilty of every element beyond a

reasonable doubt.   Petitioner raised this claim as Issue 7 in his state appellate court brief.   (Dkt. 24-2, pg. 17.)   The state appellate court found the claim was defaulted for failing to bring a timely objection at trial.   *In re Commitment of Schloss*, No. 2-13-0658, 2014 WL 5822912, at *10.   This holding is an independent and adequate state-law ground preventing this Court's habeas corpus review.   *Kaczmarek*, 627 F.3d at 592.   Claim 14 (Respondent 18) is procedurally defaulted.

The Court must address three topics before concluding its consideration of these procedural defaults.   First, the fact that the state appellate court considered the underlying merits of these claims does not defeat the procedural default because the state court did so as part of plain error review.   *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) ("And we have repeatedly explained that where a state court reviews the claim for plain error as the result of a state procedural bar such as the Illinois doctrine of waiver, that limited review does not constitute a decision on the merits.") (citations omitted).

Second, Petitioner argues that his defaults should be excused because his standby attorney influenced him to not object at times during trial.   However, Petitioner chose to proceed *pro se* both at trial and on his state appeals.   Petitioner is bound by his actions and those of his standby attorney resulting in procedural default.   *Coleman v. Thompson*, 501 U.S. 722, 754 (1991).   The Court will consider later in this opinion whether Petitioner can excuse his defaults through cause and prejudice or fundamental miscarriage of justice, but at this point in the analysis the issue is that Petitioner's inaction of not objecting when required by Illinois law resulted in the procedural default.

Finally, Petitioner argues that the state appellate court erred in finding the default because he preserved the claims in his post-trial motion.   (Dkt. 24-19, pgs. 91, 92, 98, 99, 104.)   He

argues that the post-trial motion is sufficient and the state court erred in finding a default based on the failure to bring a contemporaneous objection. However, Illinois law requires both a contemporaneous objection and a timely post-trial motion to preserve an issue for appeal. *Illinois v. Belknap*, 23 N.E.3d 325, 340 (Ill. 2014). Petitioner's claims are procedurally defaulted as explained above.

### ii. Claims Defaulted for Being Raised in a Cursory Fashion without Proper Citation to Authority.

Petitioner's Claim 9 (Respondent 14) argues that excluding the term "commitment" from the name of the SVP Act in the jury instructions resulted in a structural error. This claim was raised as Issue 15 in Petitioner's state appellate court brief. (Dkt. 24-2, pg. 17.) The state appellate court found the claim was defaulted because Petitioner presented the claim in a cursory fashion and without citation to relevant legal authority. *In re Commitment of Schloss*, No. 2-13-0658, 2014 WL 5822912, at *10. This holding is an independent and adequate state-law ground preventing this Court's habeas corpus review of the claim. *Olawale*, No. 13 C 8535, 2016 WL 278871, at *7. Claim 9 (Respondent 14) is procedurally defaulted.

Petitioner's Claim 16 (Respondent 19) argues that the prosecutor at the SVP trial violated Petitioner's right to a fair trial by shoving his hand inches from Petitioner's face and calling him "this rapist" during closing arguments at the SVP trial. This claim was raised as Issue 12 in Petitioner's state appellate court brief. (Dkt. 24-2, pg. 17). The state appellate court found the claim was defaulted because Petitioner presented the claim in a cursory fashion and without citation to relevant legal authority. *In re Commitment of Schloss*, No. 2-13-0658, 2014 WL 5822912, at *10. This holding is an independent and adequate state-law ground preventing this

Court's habeas corpus review of the claim. *Olawale*, No. 13 C 8535, 2016 WL 278871, at *7. Claim 16 (Respondent 19) is procedurally defaulted.

Petitioner's Claim 17 (Respondent 20) argues that the trial court failed to fully and fairly admonish Petitioner of the "quasi-criminal" nature of the SVP proceedings, and this prevented Petitioner from preparing a proper defense. This claim was raised as Issue 23 in Petitioner's state appellate court brief. (Dkt. 24-2, pg. 18.) The state appellate court found the claim was defaulted because Petitioner presented the claim in a cursory fashion and without citation to relevant legal authority. *In re Commitment of Schloss*, No. 2-13-0658, 2014 WL 5822912, at *10. This holding is an independent and adequate state-law ground preventing this Court's habeas corpus review of the claim. *Olawale*, No. 13 C 8535, 2016 WL 278871, at *7. Claim 17 (Respondent 20) is procedurally defaulted.

### b. Claims Procedurally Defaulted for Failure to Raise the Claim through One Complete Round of State Court Review.

Respondent next argues that Petitioner's Claim 5 (Respondent 2, 4, 5), Petitioner's Claim 3 (Respondent 6 and 9), Petitioner's Claim 11 (Respondent 8), Petitioner's Claim 4 (Respondent 10), Petitioner's Claim 7 (Respondent 13), Petitioner's Claim 12 (Respondent 16), and Petitioner's Claim 13 (Respondent 17) are procedurally defaulted because the claims were not raised through one complete round of review in the state courts. "To obtain federal habeas review, a state prisoner must first submit his claim through one full round of state-court review." *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)); *see also* 28 U.S.C. § 2254(b)(1). The prisoner must present the operative facts and controlling law of the claim before the state courts so that they have a meaningful opportunity to consider the claim before it is raised in federal court. *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006)

(citations omitted). Petitioner must raise the claim through all levels of the Illinois courts, including in a petition for leave to appeal (PLA) before the Supreme Court of Illinois. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-46 (1999)).

Petitioner raises several *Brady v. Maryland*, 373 U.S. 83 (1963), arguments in his Claim 5. Respondent subdivides the *Brady* arguments into individual claims and renumbers the individual claims. The Court shall address the claims individually.

Petitioner's Claim 5 (Respondent 2) argues that the State violated *Brady* by failing to disclose a June 19, 2008, clinic note written by a prison counselor. Respondent is correct that this issue was neither raised in Petitioner's appeal in the Appellate Court of Illinois, nor in his PLA in the Supreme Court of Illinois. (Dkt. 24-2, 24-7.) Petitioner's Claim 5 (Respondent 2) is procedurally defaulted.

Petitioner's Claim 5 (Respondent 4) argues the State violated *Brady* by failing to disclose transcripts of Petitioner's resentencing hearing. Petitioner raised the claim before the Appellate Court of Illinois, (Dkt. 24-2, pg. 18) but failed to raise it in his PLA in the Supreme Court of Illinois. (Dkt. 24-7.)

Petitioner responds that he did attempt to raise the issue, but asserts the state appellate court mischaracterized his claim. (Dkt. 39, pg. 80.) There is no dispute that Petitioner raised the claim before the appellate court; the procedural default is his failure to raise the claim in his PLA in the state supreme court. He also claims that he did raise the claim in the PLA. However, his citation is to a portion of his PLA challenging his trial court counsel's representation. (Dkt. 39, pg. 80

19

(citing PLA at pg. 36.)    There is no mention of the relevant claim in the PLA.    Petitioner's Claim 5 (Respondent 4) is procedurally defaulted.

Petitioner's Claim 5 (Respondent 5) argues that *Brady* was violated by appointed counsel's failure to turn over materials to Petitioner that had been disclosed by the State to counsel upon Petitioner representing himself and counsel transitioning to stand-by status.    The claim was neither raised in the appeal before the Appellate Court of Illinois, nor in the PLA in the Supreme Court of Illinois.    (Dkt. 24-2, 24-7.)    Petitioner's Claim 5 (Respondent 5) is procedurally defaulted.

Petitioner's Claim 3 (Respondent 6) argues the trial court erred by limiting Petitioner's cross-examination of Dr. Smith regarding a progress note.    The claim was neither raised in the appeal before the Appellate Court of Illinois, nor in the PLA in the Supreme Court of Illinois. (Dkt. 24-2, 24-7.)    Petitioner's Claim 3 (Respondent 6) is procedurally defaulted.

Petitioner's Claim 3 (Respondent 9) argues that the trial court erred by allowing the introduction of police reports at his SVP trial.    This claim was raised in Petitioner's brief before the Appellate Court of Illinois, (Dkt. 24-2, pg. 17) but it was not raised in his PLA in the Supreme Court of Illinois.    Petitioner's Claim 3 (Respondent 9) is procedurally defaulted.

Petitioner's Claim 11 (Respondent 8), argues that defense counsel was ineffective for failing to raise Fourth and Fifth Amendment grounds regarding his evaluation by Dr. Quackenbush.[3]    Petitioner failed to raise the claim in his brief before the Appellate Court of Illinois, or in his PLA before the Supreme Court of Illinois.    (Dkt. 24-2, 24-7.)

---

3 Respondent rephrases the claim slightly differently than ineffective assistance of trial counsel for failing to move to dismiss the SVP petition on Fourth and Fifth Amendment grounds.    Despite phrasing the claim differently, it is clear that the parties are addressing the same issue of ineffective

Despite failing to raise the Sixth Amendment ineffective assistance of counsel argument in the state court, Petitioner did raise the underlying argument that Dr. Quackenbush's examination violated his Fourth and Fifth Amendment rights. This, however, is insufficient to fairly present the claim to the state courts.

Petitioner was required to alert the state court to his federal claim so that the state court could adjudicate the federal issue in order to exhaust the claim. *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013). Fair presentment requires informing the state court of both the operative facts *and* controlling legal principles. *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). Petitioner did not give the state court an opportunity to adjudicate a Sixth Amendment claim because there was no mention of an alleged Sixth Amendment violation in Petitioner's brief before the Appellate Court of Illinois, or in his PLA in the Supreme Court of Illinois. Petitioner's Claim 11 (Respondent 8) is procedurally defaulted.

Petitioner's Claim 4 (Respondent 10) alleges that the trial court's failure to tender Petitioner's proposed jury instruction resulted in a structural error. Petitioner did challenge the trial court's refusal to tender his proposed jury instructions both in his appellate court brief, (Dkt. 24-2, pgs. 98-99), and in his PLA. (Dkt. 24-7, pg. 41.) However, Respondent is correct that Petitioner's arguments were limited to questions of state law and did not raise the present issue of whether the failure to provide Petitioner's jury instruction resulted in structural error. *Savage v. Robert*, No. 12 C 1802, 2013 WL 1789396, at *5-*6 (N.D. Ill. Apr. 26, 2013) (citing *Verdin v. O'Leary*, 972 F.2d 1467, 1474-75 (7th Cir. 1992); *Dougan v. Ponte*, 727 F.2d 199, 201 (1st Cir. 1984)) (internal quotations omitted)) (asserting state law challenge to jury instructions is

---

assistance of counsel for failing to raise Fourth and Fifth Amendment claims arising from Dr. Quackenbush's examination of Petitioner.

insufficient to fairly present federal claim to state court).    Petitioner's Claim 4 (Respondent 10) is procedurally defaulted.[4]

Petitioner's Claim 7 (Respondent 13) alleges that the trial court erred in allowing the jury to have a copy of the criminal indictment during deliberations.    This claim was raised before the Appellate Court of Illinois, (Dkt. 24-2, pg. 17) but was not raised in the PLA before the Supreme Court of Illinois.    (Dkt. 24-7.)    Petitioner's Claim 7 (Respondent 13) is procedurally defaulted.

Petitioner's Claim 12 (Respondent 16) alleges ineffective assistance of trial counsel for failing to object to Petitioner's evaluation by a second Illinois Department of Corrections expert. Petitioner did not raise this claim in his appeal before the Appellate Court of Illinois or in his PLA before the Supreme Court of Illinois.    (Dkt. 24-2, 24-7.)    Petitioner raised a claim regarding the second IDOC evaluator in his appellate court brief.    However, this related to the evaluator only and did not assert an ineffective assistance of counsel claim.    Additionally, there is no mention of the claim in the PLA.    Petitioner's Claim 12 (Respondent 16) is procedurally defaulted.

Petitioner's Claim 13 (Respondent 17) challenges the appointment of standby counsel after he chose to proceed *pro se* at trial.    Petitioner did not raise this claim in his appeal before the Appellate Court of Illinois or in his PLA before the Supreme Court of Illinois.    (Dkt. 24-2, 24-7.) Petitioner's Claim 13 (Respondent 17) is procedurally defaulted.

---

4  Beyond being procedurally defaulted, Petitioner's argument that the trial court failed to tender a proposed jury instruction resulted in a structural error is meritless.    Errors in jury instructions are subject to harmless error review; they are not automatically structural errors as Petitioner claims. *Neder v. United States*, 527 U.S. 1 (1999).

### c. Petitioner's Defaults are not Excused by Cause and Prejudice or Fundamental Miscarriage of Justice.

Petitioner cannot excuse his procedural defaults through either the cause and prejudice or fundamental miscarriage of justice exceptions. Regarding cause and prejudice, cause is an "'objective factor, external to [Petitioner] that impeded his efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of cause include: (1) interference by officials making compliance impractical; (2) the factual or legal basis was not reasonably available to counsel; or, (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)). The first two types of cause are not applicable to this case.

Regarding ineffective assistance of counsel to be "cause" excusing the default of an underlying issue, the ineffective assistance of counsel that resulted in the failure to preserve the claim must itself be properly preserved in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Petitioner failed to raise an ineffective assistance of counsel claim in the state court. Additionally, Petitioner proceeded *pro se* at trial and on appeal, so any deficient representation was the result of his own shortcomings when representing himself. Petitioner cannot demonstrate cause and prejudice to excuse his procedural defaults.

This leaves Petitioner with the fundamental miscarriage of justice (actual innocence) gateway to excuse his default. Proving actual innocence in this context requires Petitioner to demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggins v. Perkins*, 133 S. Ct. 1924, 1928

(2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).   This is a "demanding" and "seldom met" standard.   *McQuiggins*, 133 S. Ct. at 1928 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). Petitioner must present new, reliable evidence that was not presented at trial − such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence − to make a credible claim of actual innocence.   *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see McDonald v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'")).   "[A]ctual innocence means factual innocence . . . ."  *Bousley v. United States*, 523 U.S. 614, 624 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

Petitioner's main theme in this case is that he is actually innocent because he is not an SVP. As discussed above in the Court's rejection of Petitioner's motion to supplement and expand the record, Petitioner provides no evidence to support his claim of actual innocence.   He makes references to comments that mental health professionals allegedly made to him, but he does not provide supporting affidavits.   Nor does he provide reports from these experts supporting his position that he is not an SVP.   Petitioner merely presents the case in his favor without considering that the state presented multiple experts who opined that Petitioner met the requirements of the SVP statute.   Petitioner ignores the state experts at his trial who opined that he met the requirements to be an SVP.   He does nothing to rebut their opinions or provide his own evidence in support of his claim that he is not an SVP.   Petitioner does not meet the demand

fundamental miscarriage of justice exception. Petitioner cannot excuse his procedurally defaulted claims.

### ii.    Petitioner's Remaining Claims are Meritless

Petitioner's Claim 1 (Respondent 1), Petitioner's Claim 5 (Respondent 3), Petitioner's Claim 6 (Respondent 12), Petitioner's Claim 10 (Respondent 15), and Petitioner's Claim 15 (Respondent 12) are denied on the merits.

A writ of habeas corpus cannot issue unless Petitioner demonstrates that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). As the state courts adjudicated Petitioner's claims on the merits, the Court's review of the present habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The Court may not grant habeas relief unless the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or if the state court decision is based on an unreasonable determination of facts. 28 U.S.C. § 2254(d).

"'A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Premo v. Moore*, 562 U.S. 115, 128 (2011) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "An 'unreasonable application' occurs when a state court 'identifies the correct legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of Petitioner's case.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting

*Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (opinion of O'Connor, J.)).

Clearly established federal law is the "'holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). The state court is not required to cite to, or even be aware of, the controlling Supreme Court standard, as long as the state court does not contradict the Supreme Court standard. *Early v. Packer*, 537 U.S. 3, 8 (2002). The Court begins with a presumption that state courts both know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citations omitted).

As previously mentioned, the Court's analysis is "backward looking." *Cullen*, 563 U.S. at 182. The Court is limited to reviewing the record before the state court at the time that court made its decision. *Id.* The Court is also limited in considering the Supreme Court's "precedents as of 'the time the state court renders its decision.'" *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011) (quoting *Cullen*, 562 U.S. at 182; *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (emphasis omitted).

"The AEDPA's standard is intentionally 'difficult for Petitioner to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 134 S. Ct. 1702 (2014); *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This "'highly deferential

standard [] demands that state-court decisions be given the benefit of the doubt.'" *Cullen*, 563 U.S. at 181 (quoting *Woodford*, 537 U.S. at 24).

Petitioner's Claim 1 (Respondent 1) challenges the sufficiency of the evidence supporting Petitioner's SVP adjudication. The Court applies a "twice-deferential standard" in reviewing the state court's ruling on the sufficiency of the evidence claim. *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). First, the Court must be deferential to the verdict. "'[I]t is the responsibility of the [finder of fact] to decide what conclusions should be drawn from evidence admitted at trial.'" *Parker*, 567 U.S. at 43 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). With this in mind, "[t]he evidence is sufficient to support [the adjudication] whenever, 'after viewing the evidence in the light most favorable to the [state], *any* rational trier of fact could have found the essential elements of the [the SVP Act] beyond a reasonable doubt.'" *Parker*, 567 U.S. at 43 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). Additionally, the Court must accord an additional level of deference required by § 2254(d) under the AEDPA. *Parker*, 567 U.S. at 43 (citing *Cavazos*, 132 S. Ct. at 4).

The clearly established federal law comes from *Kansas v. Crane*, 543 U.S. 407 (2002), *Kansas v. Hendricks*, 521 U.S. 346 (1997), and *Foucha v. Louisiana*, 504 U.S. 71 (1992). These cases stand for the proposition that due process requires a finding that an individual suffers from a mental condition that effects his ability to refrain from activities that endanger others so as to make him dangerous. *McGee v. Bartow*, 593 F.3d 566, 570, 579 (7th Cir. 2010).

The state court decision is neither contrary to, nor an unreasonable application of, these standards. The state court properly identified that the evidence had to show that Petitioner had a mental disorder that made him a danger to others because it was substantially probable that he

27

would commit sexual violence towards others. *In re Commitment of Schloss*, No. 2-13-0658, 2014 WL 5822912, at *2. The state court recognized that two state experts diagnosed Petitioner with paraphilia and opined that this condition made him likely to commit sexual violence towards others. This was sufficient evidence to support the SVP finding. *Brown*, 599 F.3d at 611-12 (holding that diagnosis of paraphilia with evidence of future dangerousness was sufficient to upholding SVP adjudication); *Lieberman v. Kirby*, No. 10 C 2570, 2011 WL 6131176, at *15-*18 (N.D. Ill. Dec. 8, 2011) (same). Petitioner's arguments to the contrary are nothing more than an attempt to reargue the trial evidence. This is impermissible. *Murrell v. Frank*, 332 F.3d 1102, 1120 (7th Cir. 2003). Petitioner's Claim 1 (Respondent 1) is denied on the merits.

Petitioner's Claim 5 (Respondent 3) argues that the state violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), regarding his juvenile record. Despite invoking *Brady*, Petitioner's claim is not actually a *Brady* claim.

Petitioner argues that he requested a number of documents, including his juvenile record, prior to trial. The state allegedly responded that it did not have these documents. Despite this, the information was used at trial. Petitioner protests the unfairness of the situation. Understandably, the state court on appeal did not address the claim within the context of *Brady* because Petitioner's claim is actually about whether the state properly disclosed information during pretrial discovery.

The Court sees no *Brady* concerns. The challenged information, Petitioner's juvenile history, is a matter Petitioner knew prior to trial because it is his own criminal history. Petitioner cannot complain about the unfairness of using information that he already knows. Additionally, even if there was a *Brady* disclosure requirement, Petitioner concedes that the material was

presented at trial.  There is no *Brady* violation when evidence was disclosed during trial and Petitioner was able to make effective use of the material at trial.  *United States v. Lawson*, 810 F.3d 1032, 1043 (7th Cir. 2016)   Petitioner's Claim 5 (Respondent 3) is meritless.

Finally, Petitioner claims his adjudication as an SVP predicated upon his prior criminal conviction violates his right to be free from cruel and unusual punishment, (Petitioner's Claim 6 (Respondent 12)), the prohibition on double jeopardy (Petitioner's Claim 10 (Respondent 15)), and is a punitive application of the criminal law (Petitioner's Claim 15 (Respondent 12)).  The Supreme Court has previously rejected these lines of arguments, holding that the SVP proceeding's status as a civil proceeding separate and distinct from the prior criminal proceeding addresses these constitutional concerns.  *Hendricks*, 521 U.S. at 369-71.  The state court's rejection of these claims is neither contrary to, nor an unreasonable application of, clearly established federal law.  Petitioner's Claim 6 (Respondent 12) Claim 10 (Respondent 15), and Claim 15 (Respondent 12) are meritless.

In conclusion, Petitioner's Claims 2, 3, 4, a portion of 5, 7, 8, 9, 11, 12, 13, 14, 16, and 17 are denied because they are procedurally defaulted.  The remaining claims of 1, the remaining portion of 5, 6, 10, and 15 are denied on the merits.   The habeas corpus petition is denied.

## 3.     Certificate of Appealabilty

The Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. Petitioner cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of this case. *Resendez v. Knight*, 653 F.3d 445, 446-47 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*,

463 U.S. 880, 893 & n.4 (1983)).

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. Fed. R. App. P. 4(a)(4)(A)(vi).

**4.    Conclusion**

Petitioner's habeas corpus petition [1] is denied on the merits. Petitioner's motion to expand the record and introduce newly discovered evidence [33] is denied. Any pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to enter a judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

ENTERED:

Dated:   9/13/2017

_____
CHARLES P. KOCORAS
United States District Judge